**In re April MEYBIN, t/a Grant Street Project of 220, 224, 228, and 232–236 Grant Street, Sewickley, Pennsylvania, Debtor.**

**Bankruptcy No. 89–0805.**
**Motion No. 89–2727M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

July 24, 1989.

Paul R. Yagelski, Robert O. Lampl, Pittsburgh, Pa., for debtor.

John R. O'Keefe, Jr., Kincaid & McGrath, P.C., Pittsburgh, Pa., for Equibank.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a Motion For Relief From Automatic Stay Or For Adequate Protection by the first mortgagee, Equibank. Equibank opines that the automatic stay has no applicability to three (3) of the four (4) parcels of realty in question, as Debtor has no ownership interest in same. At best, the Moving Party avers Debtor has a power that it will exercise solely for the benefit of an entity other than Debtor, namely the legal title holder.

Equibank alternatively contends that the total amount presently due and owing to it under a promissory note exceeds the fair market value of the premises, and accordingly, Debtor has no equity therein.

With reference to the fourth parcel, which is titled in the Debtor, Equibank avers its debt exceeds the value of its security, and as Debtor is using it as her residence rather than an item for sale, it is not necessary to an effective reorganization.

Debtor denies that she has no "interest in the ... premises" and avers that she has an "interest" in the three (3) parcels titled in strangers to this proceeding by virtue of an agreement and powers-of-attorney relating to a defunct joint venture informally known as Grant Street Project. Debtor denies that she has no equity in the properties and contends that they are necessary for an effective reorganization.

After hearing the testimony offered by the parties, reviewing the exhibits, and researching the law, this Court determines the three (3) parcels not titled in Debtor not to be assets of Debtor's estate and, accordingly, not subject to the automatic stay. With reference to the fourth parcel titled in Debtor's name, this Court determines the Moving Party has not met its burden of proof and has not proven that Debtor lacks equity therein. Accordingly, there is no need to proceed to the second question, namely, whether said property is necessary to an effective reorganization.

## FACTS

Debtor April Meybin, Stanley and Vina Rideout (the "Rideouts"), Walter and Laura Brannon (the "Brannons"), and Regis and Hurley Bobonis (the "Bobonises") executed a Joint Venture Agreement on March 31, 1987. While not offered to the Court for its review, a reading of the other documents indicates that the essence of this Joint Venture Agreement provided for the development of a piece of realty, with each participant to own a particular portion thereof.

These same individuals executed and delivered to Equibank on May 20, 1987, a promissory note in the amount of $820,-000.00. As security for the note, Debtor and Charles Meybin, her then-husband, executed a mortgage with respect to the parcel owned by them located at 224 Grant Street, Sewickley, Pennsylvania, as well as a mortgage on two (2) other pieces of developed realty owned by the Meybins. Concurrently, the other joint venturers executed identical mortgages in favor of Equibank, encumbering the parcels titled in their respective name, as well as other pieces of realty owned by that particular joint venture. Specifically, the Rideouts mortgaged 220 Grant Street as well as their residence; the Bobonises mortgaged 228 Grant Street as well as their residence; and the Brannons mortgaged 232 Grant Street as well as their residence.

Apparently disagreements and/or unspoken difficulties arose by and between the parties causing them to execute a document terminating their joint venture on March 13, 1988. The thrust of said document provides for Debtor to repay the other venturers the total sum of $17,180.00 upon the sale of the fourth and final property. In exchange for the repayment, the venturers agree "to waive and relinquish any and all rights which they have or may have had under the Joint Venture Agreement ...". It is unclear whether this Agreement "to waive and relinquish" is a present waiver and/or whether it is an Agreement "to waive and relinquish" in the future upon repayment. It is clear that the property that is the subject of the

Agreement shall remain and did remain titled in the individual names of the joint venturers.

The Brannons thereafter executed a Power of Attorney on March 14, 1988, which authorized and constituted Debtor as having a power to sell and convey their respective parcel of realty. The Rideouts and the Bobonises executed similar documents on June 20, 1988.

Prior thereto, and as a result of the Joint Venture default upon the previously mentioned note and mortgage, Equibank filed a Complaint in Confession of Judgment in the Court of Common Pleas Of Allegheny County on April 13, 1988, against all of the signatories to the promissory note. Judgment was subsequently entered against them in the amount of $829,131.80, plus interest, additional late charges, attorney's fees, and costs. A Writ of Execution was issued by the Prothonotary of Allegheny County on January 4, 1989. The mortgaged premises were listed for a Sheriff's Sale on April 3, 1989.

Debtor originally filed a voluntary Chapter 11 petition on March 31, 1989. At the time of the original filing, Debtor was designated "Grant Street Project of 220, 224, 228, and 232–236 Grant Street, Sewickley, Pennsylvania, by April Meybin, Attorney-in-Fact". This original filing effectively stayed the scheduled sale of the various properties by the Sheriff.

On April 24, 1989, Equibank filed the Motion For Relief From Automatic Stay or For Adequate Protection which is now before the Court. Initially this Motion was scheduled to be heard May 23, 1989.

In the interim, a collateral matter came before the Court, which called to the Court's attention the unusual nature of this alleged "debtor". A Memorandum Opinion and Order of Court were issued by this Court on May 15, 1989, which held that the "Debtor" did *not* qualify as a "person" pursuant to 11 U.S.C. § 109(d) and that it was merely a contrivance or creation of counsel and/or Debtor so as to authorize this filing and receive the benefit of the automatic stay. It was Ordered that the case would be dismissed unless "Grant Street Project" took the necessary steps, within thirty (30) days, to qualify as a "person" under the Code.

The hearing on Equibank's motion, which initially had been scheduled for May 23, 1989, was continued with the consent of the parties until such time as the "Debtor" complied or failed to comply with the Order issued on May 15, 1989. On June 14, 1989, "Debtor" filed an amended Chapter 11 petition, indicating the "new debtor" as April Meybin, t/a Grant Street Project of 220, 224, 228, and 232–236 Grant Street, Sewickley, Pennsylvania. Within thirty (30) days thereafter, a hearing on Equibank's Motion For Relief From Stay was held, wherein substantial testimony and various exhibits were offered.

## ANALYSIS

With certain exceptions not relevant to this case, the filing of a voluntary petition:

> ... operates as a stay, applicable to all entities, of—
>
> \*     \*     \*     \*     \*     \*
>
> (2) the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case under this title.

11 U.S.C. § 362(a).

11 U.S.C. § 362(a)(2) applies, by its own terms, to "property of the estate". The threshold issue presented in this case is whether the properties located at 220, 224, 228, and 232 Grant Street are "property of the estate" for purposes of this provision of the Bankruptcy Code. If they are not "property of the estate", § 362(a)(2) does not apply and their sale by the Sheriff is not automatically stayed by the filing of a Chapter 11 petition.

11 U.S.C. § 541 identifies what is and is not "property of the estate". It includes "... all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

■ The property located at 224 Grant Street *is* clearly "property of the estate", as it was conveyed by deed to April Meybin

and Charles Meybin, her then-husband, on December 31, 1984. (On May 23, 1989, Charles Meybin conveyed his interest in the property to April Meybin pursuant to a property settlement agreement.)

■ The same cannot, however, be said of the remaining properties located at 220, 228, and 232 Grant Street. They are *not* "property of the estate" of Debtor, as she possessed neither a legal nor an equitable interest in the properties when the present case was commenced, nor does she presently possess such interest.

The Bankruptcy Code itself imposes limitations on the expansive scope of § 541:

Property of the estate does not include— (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor.

11 U.S.C. § 541(b)(1).

Debtor contended at trial that the exercise of the powers granted to her by the Power of Attorney will result in a benefit to her. Specifically, she claimed that she would derive a profit from the sale of the properties. This contention is without merit.

The powers-of-attorney executed by the Brannons, the Rideouts, and the Bobonises and the termination agreement executed on March 13, 1988, must be read in conjunction with one another.

The stated intention of the parties in executing this Agreement was to terminate the joint venture and resolve differences which they had as a result of same. The Agreement speaks to a payment to be made at some indeterminate date in the future (upon the sale of the fourth and final parcel). A fair reading of Paragraph 2, wherein the joint venturers "agree to waive and relinquish any and all rights they have or may have under the Joint Venture Agreement", including payments, contributions, profits, etc., would be that upon repayment then and only then do they waive and relinquish their right to profits, etc. This reading is bolstered by the fact that said joint venturers retained title to the various parcels of realty. It is undisputed that the sale of the fourth and final property has not occurred and that the joint venturers are still waiting for their "$17,180.00 repayment". Utilizing this analysis the Debtor merely had a possibility wrapped in a default.

Pursuant to the agreement, Debtor agreed "to assume and pay any and all obligations under the joint venture agreement and any loan commitments or financial obligations of any kind which have been incurred in the joint venture". Should she fail to perform in accordance with the terms of the agreement, then the terms of the joint venture agreement would be reinstated and given full force and effect.

Of necessity, Debtor failed to comply with her obligations. It is stipulated that the Moving Party, Equibank, executed upon its Confession of Judgment, judgment was issued against the joint venturers, and a Sheriff's Sale was scheduled for April 3, 1989. Clearly, even the remote possibility of profit was eliminated prepetition when the default caused the reinstatement of the terms of the joint venture agreement.

■ A review of the facts in this case also shows that a contrary reading of this document offers no assistance to the position of the Debtor, as the power that she could exercise has, at best, an illusory or non-existent benefit to her.

At trial, testimony was offered indicating a total debt to Equibank of $1,022,860.00. No credible testimony was offered to contradict said figure.

Each party presented expert testimony as to fair market value of the realty in question. Both sides commented on the importance of location generally in the appraisal of real estate and specifically agreed that the Sewickley location had a unique charm, enhancing the value of realty.

Equibank's expert valued the property at approximately $700,000.00, while Debtor's expert estimated a fair market value in excess of $1 million. While we find no specific fault with Debtor's expert, we find the testimony offered by Equibank to be more convincing. Both experts used the

"comparable sales" approach; however, the comparables used by Equibank were located in Sewickley, whereas Debtor's comparables were located outside of the borough.

Equibank's expert had the time to appraise the property and, in fact, used that time to peruse and inspect the interior and exterior of same. Debtor's expert was retained one (1) day prior to the hearing and had no opportunity to adequately review one of the parcels. In fact, he had no time and did not view or properly appraise the other three parcels. Finally, this Court finds it enlightening that three (3) qualified realtors were retained by Debtor over the past two (2) years in an effort to sell the property in question for sums comparable to the value she and her expert placed upon them. In this two-year period no sale has been consummated, and to the contrary, Debtor offered no written agreement to purchase into evidence.

Clearly Debtor's values are inflated and equally clearly, there will be no benefit that will accrue to her as a result of the Joint Venture Agreement and/or Power of Attorney. Debtor merely holds a power to the benefit of a third party, and this power is not property of the estate.

With reference to the property located at 224 Grant Street, which admittedly is owned by Debtor April Meybin, the Moving Party, in order to be granted relief from stay, must initially prove that the value of its security is exceeded by its debt. If the Moving Party meets its burden of proof and proves that Debtor has no equity in the property, then Debtor has the burden of proving that the property is necessary to an effective reorganization.

Equibank is secured by one parcel in this Sewickley group, having an approximate fair market value of $185,000.00. In addition, Equibank has a mortgage encumbering two (2) other pieces of realty owned by Debtor and/or her and ex-husband. No evidence was offered as to the fair market value of this additional security, and accordingly, no determination is possible that Debtor lacks equity in the property in ques-

tion. Relief from stay cannot and will not be granted regarding 224 Grant Street.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 24th day of July, 1989, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the automatic stay has no applicability and/or is terminated insofar as it affects the interest of Equibank in real properties located at 220 Grant Street, Sewickley, Pennsylvania 15143; 228 Grant Street, Sewickley, Pennsylvania 15143; and 232 Grant Street, Sewickley, Pennsylvania 15143.

IT IS FURTHER ORDERED that the automatic stay is *not* terminated with respect to real property located at 224 Grant Street, Sewickley, Pennsylvania 15143.